UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

**ROBERT KITCHEN, et al.,**

      **Plaintiffs,**

  **v.**                                  **ACTION NO. 4:06cv138**

**CITY OF NEWPORT NEWS, VIRGINIA,**

      **Defendant.**

### DISMISSAL ORDER

The plaintiffs bring this 42 U.S.C. § 1983 action against the City of Newport News, Virginia, ("the City") for an alleged taking of private property without just compensation in violation of the Fifth Amendment to the United States Constitution.[1] This matter is currently before the court on the defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) and (b)(6). For the reasons stated below, the defendant's motion is **GRANTED**.[2]

### I. Facts and Procedural History

This case arises out of the widespread destruction suffered in Virginia and North Carolina when Hurricane Floyd struck the eastern

---

[1] The plaintiffs in this action consist of owners, tenants, residents, and visitors of town homes in the Brookside, Woodbridge Crossing, and Heatherwood subdivisions in the City during Hurricane Floyd in September 1999. In their complaint, the named plaintiffs seek class action certification for persons associated with each subdivision.

[2] Because the defendant's motion to dismiss is granted, the defendant's motion to strike, which was filed on March 12, 2007, is **MOOT**.

seaboard of the United States on September 15 and 16, 1999. As a result of this hurricane, the Brookside, Woodbridge Crossing, and Heatherwood subdivisions, which are located in the bottom of a large watershed area in the northern part of the City, experienced significant flooding. The plaintiffs allege that the defendant had notice that these subdivisions would flood during heavy rains, yet acted improperly in failing to prevent or reduce such flooding.

Specifically, on September 15, 1999, heavy rains from Hurricane Floyd fell on portions of the City, including the plaintiffs' subdivisions. These subdivisions experienced exceptional flooding, which was allegedly worse than any other area of the City. On September 16, 1999, the flood waters failed to recede and remained in a standing condition. The plaintiffs assert that the source of the flood waters was the overflow of Jones Run, the sole conduit for carrying watershed runoff through the watershed and the subdivisions, as well as Jones Pond, the retention pond into which Jones Run empties.

The plaintiffs identify three primary causes of this overflow and eventual flooding of their subdivisions, all of which they claim were within the control of the defendant. First, the plaintiffs claim that the defendant's installation and maintenance of an inadequately-sized underground storm drain pipe, which was supposed to redirect the flow of water from Jones Run and Jones Pond to the Warwick River, was a major cause of the extensive

flooding. Second, the plaintiffs allege that the defendant's grant of development rights in the watershed area above their subdivisions, which were to drain into Jones Run, altered the ecological landscape and caused increased runoff. Third, the plaintiffs assert that the defendant's failure to require developers of property above the their subdivisions to install adequate retention ponds also increased runoff. As a result, the plaintiffs argue that the defendant essentially used their subdivisions as a contingency retention pond for Jones Run during Hurricane Floyd, which caused significant damages to their real and personal property.

On June 21, 2002, after providing notice to the City, the plaintiffs filed suit in the Circuit Court of the City of Newport News, Virginia, asserting state and federal claims, including a claim identical to the claim in the instant action. The state court, however, dismissed this action in its entirety on November 7, 2006. The plaintiffs appealed this decision to the Supreme Court of Virginia on February 9, 2007.[3]

On October 27, 2006, while this state action was still pending in trial court, the plaintiffs filed the instant action in federal court. On March 12, 2007, while this state action was pending at the appellate level, the defendant filed an answer and a motion to

---

[3] Robert Kitchen, et al. v. City of Newport News, Record Number 070322. Notably, the state appellate process remains ongoing.

dismiss, supported by a memorandum. On April 23, 2007, the plaintiffs filed a response in opposition to the defendant's motion to dismiss. This motion is therefore now ripe for review.

## II. Analysis

The defendant moved to dismiss the plaintiffs' takings claim pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that this case is not ripe because the plaintiffs have not secured a final state judgment denying just compensation. Accordingly, this court's analysis will focus solely on whether the plaintiffs' claim is ripe for adjudication at this juncture.

The Just Compensation Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that "private property [shall not] be taken for public use, without just compensation." U.S. CONST. amend. V. As the Supreme Court has stated,

> [t]he Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation. Nor does the Fifth Amendment require that just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a reasonable, certain and adequate provision for obtaining compensation exist at the time of the taking. . . . [I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation.

Williamson County Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 194-95 (1985) (internal citations and quotations omitted). It follows that a property owner's takings claim is not ripe until he

4

has exhausted state compensation procedures. Shooting Point, L.L.C. v. Cumming, 238 F. Supp. 2d 729, 740 (E.D. Va. 2002).

Virginia law provides both a constitutional and statutory procedure for property owners to obtain compensation for governmental takings. See VA. CONST. of 1970, art. I, § 11; VA. CODE ANN. §§ 8.01-184, 8.01-187. The statutory procedure explicitly provides for an inverse condemnation remedy.[4] N. Virginia Law Sch., Inc. v. City of Alexandria, 680 F. Supp. 222, 224 (E.D. Va. 1988). "The constitutional remedy and the statutory remedy are not mutually exclusive; either may be used by an aggrieved landowner." Pasquotank Action Council, Inc. v. City of Virginia Beach, 909 F. Supp. 376, 380 (E.D. Va. 1995). The plaintiffs bear the burden of demonstrating that this state compensation procedure has been exhausted; in other words, the plaintiffs must show that the state has entered a final judgment denying them just compensation. See

---

[4] The Supreme Court has stated that

> [t]he phrase inverse condemnation appears to be one that was coined simply as a shorthand description of the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted. As defined by one land use planning expert, inverse condemnation is a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency.

United States v. Clarke, 445 U.S. 253, 257 (1980) (internal citation and quotations omitted).

5

San Remo Hotel, L.P. v. City & County of San Francisco, 545 U.S. 323, 337 (2005); Williamson, 473 U.S. at 196-97; see also Greenspring Racquet Club, Inc. v. Baltimore County, Md., Nos. 99-2444, 00-1012, 2000 WL 1624496, at *4 (4th Cir. Oct. 31, 2000) (per curiam) (unpublished table decision) (stating that Williamson "requires a federal takings litigant first to litigate in state court").

Here, the plaintiffs have not satisfied Williamson's ripeness requirement, because they have not secured a final state judgment denying them just compensation. Even though the state court denied just compensation at the trial level, the plaintiffs have appealed this decision to the Supreme Court of Virginia, which appeal is pending. The Supreme Court of Virginia has previously held, for purposes of res judicata and collateral estoppel, that a judgment which is being appealed is not final. Arkansas Best Freight Sys., Inc. v. H.H. Moore, Jr. Trucking Co., 244 Va. 304, 307, 421 S.E.2d 197, 198 (1992); Faison v. Hudson, 243 Va. 413, 419, 417 S.E.2d 302, 305 (1992). Thus, the plaintiffs have not received a final judgment denying just compensation, and as a result, their claim is not yet ripe.[5] No case or controversy exists at this time, and

---

[5] Even though this court is dismissing the plaintiffs' complaint without prejudice for being unripe, it notes that serious questions remain about the overall viability of this action. The Fourth Circuit has provided the following discussion, which highlights this court's main concerns:

Commentators have criticized the use of the term

6

thus, this court has no subject matter jurisdiction. The plaintiffs' complaint is thereby **DISMISSED** without prejudice pursuant to Rule 12(b)(1).[6]

---

> "ripeness" to describe the "just compensation" requirement, stating that "the ripeness label gives the erroneous impression that litigation in state court will ripen a federal takings claim. In reality . . . preclusion and the Rooker-Feldman doctrine often will bar federal court relitigation." Douglas T. Kendall et al., Choice of Forum and Finality Ripeness: The Unappreciated Hot Topics in Regulatory Takings Cases, 33 Urb. Law. 405, 409 (2001). See also Julian C. Juergensmeyer & Thomas E. Roberts, Land Use Planning and Control Law 450-51 (1998). The point is well taken. A determination that a claim is unripe often suggests that a litigant will eventually be able to return to federal court for a decision on the merits. Litigants should be aware that in the context of takings jurisprudence, a dismissal for ripeness does not imply that the litigant will eventually have the opportunity to litigate the merits of their takings claim in federal court. Often, by the time a federal takings claim is ripe, it is also precluded from being litigated. See Dodd v. Hood River County, 136 F.3d 1219 (9th Cir. 1998); Thomas E. Roberts, Ripeness and Forum Selection in Fifth Amendment Takings Litigation, 11 J. Land Use & Envtl. L. 37, 72 (1995) ("Ironically, an unripe suit is barred at the moment it comes into existence. Like a tomato that suffers vine rot, it goes from being green to mushy red overnight."). Nevertheless, the Supreme Court has referred to the "just compensation" predicate as a ripeness requirement, see Williamson, 473 U.S. at 194, and we think the term, despite its potentially misleading connotations, most accurately explains why [the plaintiff's] claim cannot be considered on the merits at this stage. State court litigation does ripen the federal claim; any subsequent bar to federal court litigation would not be a ripeness bar, but a claim or issue preclusion bar.

Henry v. Jefferson County Planning Comm'n, 34 F. App'x 92, 96 n.2 (4th Cir. 2002) (per curiam).

[6] But see supra note 5.

The Clerk is **DIRECTED** to send a copy of the Dismissal Order to counsel for all parties.

    **IT IS SO ORDERED.**

                                          /s/
                              UNITED STATES DISTRICT JUDGE

Norfolk, Virginia

May 1, 2007